CAMP, COMPTROLLER OF THE CURRENCY *v.*
PITTS ET AL.

No. 72–864.   Decided March 26, 1973

PER CURIAM.

In its present posture this case presents a narrow, but substantial, question with respect to the proper procedure to be followed when a reviewing court determines that an administrative agency's stated justification for informal action does not provide an adequate basis for judicial review.

In 1967, respondents submitted an application to the Comptroller of the Currency for a certificate authorizing them to organize a new bank in Hartsville, South Carolina. See 12 U. S. C. § 27; 12 CFR § 4.2 (1972). On the basis of information received from a national bank examiner and from various interested parties, the Comptroller denied the application and notified respondents of his decision through a brief letter, which stated in part: "[W]e have concluded that the factors in support of the establishment of a new National Bank in this area

are not favorable." No formal hearings were required by the controlling statute or guaranteed by the applicable regulations, although the latter provided for hearings when requested and when granted at the discretion of the Comptroller.[1] Respondents did not request a formal hearing but asked for reconsideration. That request was granted and a supplemental field examination was conducted, whereupon the Comptroller again denied the application, this time stating in a letter that "we were unable to reach a favorable conclusion as to the need factor," and explaining that conclusion to some extent.[2] Respondents then brought an action in federal district court seeking review of the Comptroller's decision. The entire administrative record was placed before the court, and, upon an examination of that record and of the two letters of explanation, the court granted summary judgment against respondents, holding that *de novo* review was not warranted in the circumstances and finding that "although the Comptroller may have erred, there is substantial basis for his determination, and . . . it was neither capricious nor arbitrary." 329 F. Supp. 1302, 1308. On appeal, the Court of Appeals did not reach the merits. Rather, it held that the Comptroller's ruling

---

[1] See 12 CFR § 4.12 (d) (1967). The regulations were amended in 1971, 36 Fed. Reg. 5051. For the present regulation, see 12 CFR § 5.4 (1972).

[2] The letter reads in part:

"On each application we endeavor to develop the need and convenience factors in conjunction with all other banking factors and in this case we were unable to reach a favorable conclusion as to the need factor. The record reflects that this market area is now served by the Peoples Bank with deposits of $7.2MM, The Bank of Hartsville with deposits of $12.8MM, The First Federal Savings and Loan Association with deposits of $5.4MM, The Mutual Savings and Loan Association with deposits of $8.2MM and the Sonoco Employees Credit Union with deposits of $6.5MM. The aforementioned are as of December 31, 1968."

was "unacceptable" because "its basis" was not stated with sufficient clarity to permit judicial review. 463 F. 2d 632, 633. For the present, the Comptroller does not challenge this aspect of the court's decision. He does, however, seek review here of the procedures that the Court of Appeals specifically ordered to be followed in the District Court on remand. The court held that the case should be remanded "for a trial de novo before the District Court" because "the Comptroller has twice inadequately and inarticulately resolved the [respondents'] presentation." The court further specified that in the District Court, respondents "will open the trial with proof of their application and compliance with the statutory inquiries, and proffer of any other relevant evidence." Then, "[t]estimony may . . . be adduced by the Comptroller or intervenors manifesting opposition, if any, to the new bank." On the basis of the record thus made, the District Court was instructed to make its own findings of fact and conclusions of law in order to determine "whether the [respondents] have shown by a preponderance of evidence that the Comptroller's ruling is capricious or an abuse of discretion." 463 F. 2d, at 634.

We agree with the Comptroller that the trial procedures thus outlined by the Court of Appeals for the remand in this case are unwarranted under present law.

Unquestionably, the Comptroller's action is subject to judicial review under the Administrative Procedure Act (APA), 5 U. S. C. § 701. See *Association of Data Processing Service Organizations* v. *Camp,* 397 U. S. 150, 156–158 (1970). But it is also clear that neither the National Bank Act nor the APA requires the Comptroller to hold a hearing or to make formal findings on the hearing record when passing on applications for new banking

authorities. See 12 U. S. C. § 26; 5 U. S. C. § 557.[3] Accordingly, the proper standard for judicial review of the Comptroller's adjudications is not the "substantial evidence" test which is appropriate when reviewing findings made on a hearing record, 5 U. S. C. § 706 (2)(E). Nor was the reviewing court free to hold a *de novo* hearing under § 706 (2)(F) and thereafter determine whether the agency action was "unwarranted by the facts." It is quite plain from our decision in *Citizens to Preserve*

---

[3] Title 12 U. S. C. § 26 contemplates a wide-ranging *ex parte* investigation; it reads as follows:

*"Comptroller to determine if association can commence business.*

"Whenever a certificate is transmitted to the Comptroller of the Currency, as provided in this chapter, and the association transmitting the same notifies the comptroller that all of its capital stock has been duly paid in, and that such association has complied with all the provisions of this chapter required to be complied with before an association shall be authorized to commence the business of banking, *the comptroller shall examine into the condition of such association, ascertain especially the amount of money paid in on account of its capital, the name and place of residence of each of its directors, and the amount of the capital stock of which each is the owner in good faith, and generally whether such association has complied with all the provisions of this chapter required to entitle it to engage in the business of banking;* and shall cause to be made and attested by the oaths of a majority of the directors, and by the president or cashier of the association, a statement of all the facts necessary to enable the comptroller to determine whether the association is lawfully entitled to commence the business of banking." (Emphasis added.)

As to the APA, its requirement of a written statement of "findings and conclusions, and the reasons or basis therefor" (5 U. S. C. § 557 (c)(3)(A)), applies only to rulemaking proceedings (§ 553) and to adjudications "required by statute to be determined on the record after opportunity for an agency hearing" (§ 554 (a)). By its terms, then, the APA's requirement of formal findings is not relevant since the National Bank Act plainly does not require agency hearings on applications for new banks.

*Overton Park* v. *Volpe,* 401 U. S. 402 (1971), that *de novo* review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions. *Id.,* at 415. Neither situation applies here. The proceeding in the District Court was obviously not brought to enforce the Comptroller's decision, and the only deficiency suggested in agency action or proceedings is that the Comptroller inadequately explained his decision. As *Overton Park* demonstrates, however, that failure, if it occurred in this case, is not a deficiency in factfinding procedures such as to warrant the *de novo* hearing ordered in this case.

The appropriate standard for review was, accordingly, whether the Comptroller's adjudication was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," as specified in 5 U. S. C. § 706 (2)(A). In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. Respondents contend that the Court of Appeals did not envision a true *de novo* review and that, at most, all that was called for was the type of "plenary review" contemplated by *Overton Park, supra,* at 420. We cannot agree. The present remand instructions require the Comptroller and other parties to make an evidentiary record before the District Court "manifesting opposition, if any, to the new bank." The respondents were also to be afforded opportunities to support their application with "any other relevant evidence." These instructions seem to put aside the extensive administrative record already made and presented to the reviewing court.

If, as the Court of Appeals held and as the Comptroller does not now contest, there was such failure to explain administrative action as to frustrate effective

judicial review, the remedy was not to hold a *de novo* hearing but, as contemplated by *Overton Park,* to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary. We add a caveat, however. Unlike *Overton Park,* in the present case there was contemporaneous explanation of the agency decision. The explanation may have been curt, but it surely indicated the determinative reason for the final action taken: the finding that a new bank was an uneconomic venture in light of the banking needs and the banking services already available in the surrounding community. The validity of the Comptroller's action must, therefore, stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration. See *SEC* v. *Chenery Corp.,* 318 U. S. 80 (1943). It is in this context that the Court of Appeals should determine whether and to what extent, in the light of the administrative record, further explanation is necessary to a proper assessment of the agency's decision.

The petition for certiorari is granted, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*