**AMERICAN CANOE ASSOCIATION, INC. and American Littoral Society, Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

No. 98–979–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 29, 1999.

Dale R. Schmidt, Alexandria, VA, for plaintiff.

Helen Fahey, United States Attorney, Sharon L. Parrish, Assistant United States Attorney, Alexandria, VA, for defendant.

1. 33 U.S.C. § 1294 *et seq.*

2. 16 U.S.C. § 1531 *et seq.*

3. 5 U.S.C. § 551 *et seq.*

4. The factual and statutory background underlying this suit are more fully set out in

## MEMORANDUM OPINION

ELLIS, District Judge.

In this suit, the American Canoe Association and American Littoral Society assert that the Clean Water Act[1] (CWA) and the Endangered Species Act[2] (ESA), in conjunction with the Administrative Procedure Act[3] (APA), impose various nondiscretionary and discretionary duties on the United States Environmental Protection Agency (EPA) and that EPA has failed to perform these duties. This matter comes before the Court on EPA's motion for a protective order limiting discovery to the administrative record and striking plaintiffs' amended discovery requests. For the reasons that follow, EPA's motion is granted.

### I.

This case arises out of plaintiffs' allegation that they have been harmed in their attempts to make aesthetic and recreational use of Virginia's rivers, streams, and coastlines because EPA has failed to perform its duties under the CWA to identify Virginia's most heavily polluted waters and restore the chemical, physical, and biological integrity of those waters. They also allege that EPA's approval of various actions taken by Virginia pursuant to the CWA constitutes agency action under the ESA and, as a result, that EPA was required to consult with the Secretary of the Interior or the Secretary of Commerce to insure that such action did not jeopardize any endangered or threatened species. According to plaintiffs, this statutorily mandated consultation never occurred.[4]

On December 11, 1998, plaintiffs served EPA with plaintiffs' amended interrogatories, requests for admissions, and requests for production of documents, plaintiffs' re-

*American Canoe Ass'n v. United States Envt'l Protection Agency,* 30 F.Supp.2d 908 (E.D.Va. 1998), in which defendants' motion to dismiss the complaint was granted in part, denied in part, and deferred in part.

quest pursuant to Fed.R.Civ.P. 30(b)(6) for designation of individuals with knowledge, and plaintiffs' memorandum concerning further factual development. These documents sought extensive discovery beyond the administrative record.[5] EPA seeks a protective order striking these amended discovery requests or in the alternative seeks leave for an additional ten days after the Court's order to file objections to any surviving portion of plaintiffs' discovery requests.

## II.

■ In general, judicial review of agency action pursuant to the APA is confined to the agency's administrative record. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Plaintiffs' attempt to go beyond the administrative record in this case rests on their contention that discovery in Counts 4, 6, and 11 is not appropriately so limited since these claims are not brought under the APA. Count 4 of plaintiffs' complaint alleges that EPA has failed to establish total maximum daily loads (TMDLs)[6] and total maximum daily thermal loads (TMDTLs)[7] for Virginia's waters, as required by the Clean Water Act, while count 6 alleges that EPA's failure either to approve or disapprove Virginia's continuing planning process (CPP)[8] constitutes a failure to perform a mandatory, nondiscretionary duty under the CWA. These counts are brought under the citizen suit provision of the CWA, which permits challenge of EPA's failure to perform "any act or duty under this chapter which is not discretionary"

with the agency. 33 U.S.C. § 1365(a)(2). Count 11 contends that EPA has violated the ESA by failing to consult with the U.S. Fish and Wildlife Service and the National Marine Fisheries Service as required by § 7 of the ESA before taking various actions related to its approval of Virginia's CWA efforts and submissions, *see* 16 U.S.C. § 1536, and this claim is brought under the citizen suit provision of the ESA, which empowers "any person" to bring suit to enjoin anyone alleged to be in violation of the ESA, 16 U.S.C. § 1540(g). Plaintiffs contend that claims brought pursuant to the CWA and ESA citizen suit provisions should not be limited to the administrative record because the APA and its requirements have no relevance to these claims.

■ Although the Fourth Circuit has not yet addressed this contention, it has recently been considered and rejected by the Eighth Circuit. In *Newton County Wildlife Ass'n v. Rogers,* 141 F.3d 803, 808 (8th Cir.1998), the court concluded that review of ESA and CWA citizen suit claims should be confined to the administrative record. Central to the resolution in *Rogers* was the observation that the two citizen suit provisions, while providing for judicial review, set forth no standard for that review. Under *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), "where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, ... consideration is to be confined to the administrative record and ... no *de novo* proceeding

---

5. EPA provided plaintiffs the administrative record on November 10, 1998, pursuant to the Court's instructions.

6. A TMDL represents the highest level at which a pollutant may be "loaded" into a water body without violating water quality standards. *See* 33 U.S.C. § 1313(d)(1)(C).

7. To address thermal pollution, the CWA requires each state to estimate the total maximum daily thermal load (TMDTL) required to "assure protection and propagation of a bal-

anced, indigenous population of shellfish, fish and wildlife" in each thermally-impaired WQLS. 33 U.S.C. § 1313(d)(1)(D).

8. Section 303(d) of the CWA requires each state to have an EPA-approved continuing planning process (CPP) for meeting the CWA's requirements. *See* 33 U.S.C. § 1313(e). States were required to submit their initial CPPs for EPA approval by February 17, 1973, and EPA was required to approve or disapprove these submissions within 30 days. *See* 33 U.S.C. § 1313(e)(2).

may be held." *Id.* at 715, 83 S.Ct. 1409. In short, where, as here, the statutes in issue provide for judicial review via citizen suit provisions, yet do not set forth a standard for that review, judicial review is limited to APA review on the administrative record.[9]

Indeed, limiting judicial review to the administrative record in typical citizen suits is consistent with a sensible reluctance to involve the judiciary too deeply in administrative decision making, which reluctance permits agencies to function efficiently within their areas of expertise. Such a restriction serves to prevent reviewing courts from improperly substituting their own judgment and determination for that of the agency. *See generally Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

While neither this nor other circuits have explicitly so limited the scope of discovery in CWA and ESA citizen suits, there is authority holding uniformly that the standard of review governing is the APA standard, thus lending support to the Eighth Circuit's conclusion. In *Cabinet Mountains Wilderness v. Peterson,* 685 F.2d 678 (D.C.Cir.1982), for instance, plaintiff brought a citizen suit under the ESA and argued that the ESA's citizen suit provision empowered district courts to review the challenged agency actions *de novo.* The D.C. Circuit concluded, in part in reliance on the *Carlo Bianchi* language, quoted above, that "[t]he applicability of *de novo* review to administrative actions is limited and is generally not presumed in the absence of statutory language or legislative intent to the contrary." *Id.* at 685. The court then examined the citizen suit provision and observed that while it provided a right of action, it did not direct trial courts to conduct *de novo* review in adjudicating such actions. *Id.* In the absence of such a directive and in recognition of the fact that the challenged administrative function had been committed to the expertise of the agency, the court applied the APA's "arbitrary and capricious" standard[10] to review of the agency action. *Id.* This result suggests that in the absence of explicit statutory direction to the contrary, APA procedures and standards govern review of agency action challenged pursuant to citizen suits.

In addition, the Fourth Circuit, in *National Wildlife Federation v. Hanson,* 859 F.2d 313 (4th Cir.1988), suggested that since the CWA citizen suit provision does not establish standards for reviewing EPA action, the appropriate standard of review in citizen suit cases is to be found in the APA. *See id.* at 316. Specifically, the Fourth Circuit held that the district court's review of the challenged agency action under an APA "arbitrary and capricious" standard "was proper and did not alter the jurisdictional base of the court's judgment." *Id. Hanson* thus supports the conclusion that the CWA and ESA citizen suit provisions operate in conjunction with the APA's standards and procedures for administrative review.[11] And indeed, if the

---

9. *See also Preserve Endangered Areas of Cobb's History v. United States Army Corps of Eng'rs,* 87 F.3d 1242 (11th Cir.1996). *Cobb's County* affirmed the district court's entry of a protective order prohibiting plaintiff from engaging in extra-record discovery and its dismissal of plaintiff's CWA citizen suit claim. It is not clear whether the protective order was entered while the CWA citizen suit was still viable. In any event, an ESA claim, presumably brought pursuant to the ESA citizen suit provision, survived, *see id* at 1245, and even so the Eleventh Circuit affirmed the district court's decision to prohibit discovery beyond the administrative record, *see id.* at 1246–47.

10. 5 U.S.C. § 706(2)(A).

11. *See also Fund for Animals v. Babbitt,* 903 F.Supp. 96, 104 (D.D.C.1995) (holding that actions of the Fish and Wildlife Service challenged under the ESA citizen suit provision "are reviewed as agency action subject to the standards of review under the APA"); *Stoeco Dev., Ltd. v. Department of the Army Corps of Eng'rs,* 792 F.Supp. 339, 342 (D.N.J.1992) (noting that in a CWA citizen suit, a court is essentially asked to "second-guess" agency decisions and that "the arbitrary and capricious standard is entirely appropriate" in such a case).

APA supplies the appropriate standard of review in citizen suit cases, it would be irrational to expand discovery beyond the administrative record, as an "arbitrary and capricious" standard assumes that the court will, in the usual circumstance, base its review upon the material actually before the agency. Plaintiffs, on the other hand, fail to point to any case in which any court, specifically confronted with the issue, has held that the APA standards do not govern citizen suit claims. Thus, persuasive precedent and settled principles of administrative law compel the conclusion that discovery in plaintiffs' CWA and ESA citizen suits are properly limited to APA record review.

Yet this does not end the analysis, for even in APA record review cases, circumstances may justify expanding the record or permitting discovery. *See Fort Sumter Tours v. Babbitt,* 66 F.3d 1324, 1336 (4th Cir.1995). These circumstances include such a failure in the record to explain administrative action as to frustrate judicial review, the agency's reliance on materials or documents not included in the administrative record, or the need to supplement the record to explain or clarify technical terms or other difficult subject matter included. in the record. *See generally Public Power Council v. Johnson,* 674 F.2d 791, 793 (9th Cir.1982) (enumerating circumstances in which discovery beyond the administrative record might be appropriate). Plaintiffs have failed to show that any such circumstances exist here.

Accordingly, EPA's motion for a protective order is granted, and discovery in this matter, until further order of this Court, is limited to the administrative record. Plaintiffs may renew their request for extra-record discovery, provided plaintiffs (i) identify with particularity the nature of the extra-administrative record discovery needed and (ii) demonstrate a particularized need for the discovery sought, including a specification of the disputed material fact or facts to which the requested discovery pertains. An appropriate order has entered.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.